**IN THE UNITED STATES OF AMERICA**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **V.** | * | **CR15-88 CG** |
| | * | |
| **Xiulu Ruan** | * | |

### BRIEF ON DEFENDANT'S OBJECTION APPLICATION FOR WARRANT

The Government has filed an applicant for a search warrant, wherein it seeks emails from Defendant Xiulu Ruan's email address on Yahoo! Servers. (Document no. 197). As the parties agree, the time period the warrant seeks emails relates up until June 20, 2015, which is approximately a month after Ruan was arraigned in the instant case. Citing an ongoing investigation as its reasons for seeking the emails post indictment, the Government filed its application. The parties agree that these emails will net voluminous attorney client contact between numerous lawyers representing Ruan. To prevent contamination/violation of attorney client privilege, the Government has proposed a "taint team" to review the emails prior to access by the prosecution team of United States Attorneys and law enforcement agencies/officials. Defendant, through counsel objected to the proposed "taint team". To be clear, defendants are not objecting to the application, itself, rather solely and simply to the mechanism the Government has proposed to prevent any breach of attorney client privilege. As such, Counsel for Defendant requests this Honorable Court to appoint a special master to review the emails prior to dissemination to the Government.

There are many concerns as to the potential breach of attorney client privilege and the consequences if privileged information between attorney and client is shared with the Government, whether purposeful or accidental. To attempt to prevent breach, the Government proposes to exclude email addresses of all attorneys and their related offices, and additionally employ search terms to exclude those involved in Ruan's representation.  However, this is not certain to prevent a breach, in the sense that it may not exclude strings of emails, chains of email, or protect the privilege in the event of misspellings.   A simple appointment of a Special master will ensure all parties are secure in their communications, and will prevent the accidental breach of privileged information.  The law is largely undeveloped in this area, however the right to counsel and privilege is firm: "The Sixth Amendment guarantees a defendant the right to effective counsel and a fair trial." *Coplon v. United States*, 191 F.2d 749, 757 (D.C. Cir. 1951). To provide effective assistance, a lawyer and a defendant must be able to communicate with each other without fear that the government will seize those communications and use them against the defendant. *See United States v. Levy*, 577 F.2d 200, 209 (3rd Cir. 1978). (overruled on other grounds).

To protect a defendant's Sixth Amendment rights, the government has established certain procedures to follow. For example, agents are trained that they "must exercise special care when planning a computer search that may result in the seizure of legally privileged documents such as . . . attorney-client communications." OFFICE OF LEGAL EDUCATION EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS, SEARCHING AND SEIZING COMPUTERS AND OBTAINING

ELECTRONIC EVIDENCE IN CRIMINAL INVESTIGATIONS[1] at p. 109. If potential to encounter privileged material exists, the government's internal manual states, "a trustworthy third party must examine the computer to determine which files contain privileged material. After reviewing the files, the third party will offer those files that are not privileged to the prosecution team." *Id.* at 110. This third-party team creates an "ethical wall" between the evidence and the prosecution team, "*permitting only unprivileged files to pass over the wall.*" *Id.* And even when the government follows its procedures and establishes an independent in-house taint team, the "risks to privilege" are "inevitable" and "reasonably foreseeable." *In re Grand Jury Subpoenas 04–124–03 and 04–124–05*, 454 F.3d 511, 523 (6th Cir. 2006). Though the government should protect the attorney-client privilege, "it also possesses a conflicting interest in pursuing the investigation, and, human nature being what it is, occasionally some taint team attorney will make mistakes or violate their ethical obligations." *Id.* For this reason, often a "special master [is] appointed to expeditiously conduct a computer word search for key words that would identify attorney related documents and . . . segregate those records from non- attorney related documents." *United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1037 (D. Nev. 2006). The defendant should be "provided an opportunity to review the documents, identify those to which he claimed privilege and the court would then decide the privilege claims." *Id.*  There is no doubt

        The consequences of any breach of the privilege would be costly and drastic. Some Courts have disqualified the prosecution's office and agents in its entirety.

---

[1] http://www.justice.gov/sites/default/files/criminal-ccips/legacy/2015/01/14/ssmanual2009.pdf

"The minimum remedy for a Sixth Amendment violation starts with requiring a new prosecutorial and investigative team, dismissing all evidence gathered and work product developed after the unconstitutional intrusion." *Shillinger v Haworth*, 70 F.3d 1132 (10th Cir. 1995).

Defendant submits that Federal Rule of Evidence 706 would permit the appointment of a special master:

> **Appointment Process.** On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.

Fed. R. Evid. 706(a).

Courts have used Rule 706 to make use of a Special Master.  In the work SPECIAL MASTER'S INCIDENCE AND ACTVITY, (2000)[2], a report by the Federal Judicial Center, Rule 706 was the authority cited to appoint a Special Master as a neutral third party for certain purposes in a cases.  *Id* at 32.

The Defense does not allege prosecutorial misconduct or malevolent intent on behalf of the Assistant United States Attorney's prosecuting this instant case. Both AUSAs Griffin and Bodnar have kept defense Counsel apprised of the Government's intentions and proposed procedures for preventing possible breach. However, given the ever-evolving climate of e-discovery, technology of computers and email development, an approach that limits any breach as opposed to merely

---

[2] www.uscourts.gov/file/specmastpdf

possible prevention is the most appropriate course to take.  If the Government is granted access to emails exchanged between Defendant and Counsel, the remedy for any violation that may occur if the attorney-client privilege is breached is severe and drastic, and the appointment of a neutral third party would protect the interests of justice and eliminate any appearance of impropriety in the gathering of post-indictment emails.  Thus, in order to prevent any attorney client privilege breach, Defendant requests this Court appoint a special master.

WHEREFORE premises considered, Counsel respectfully requests that a Special Master be appointed to review the Government's Application.

Respectfully submitted this 9th day of October, 2015.

/s/ Jason Darley_____
Jason Darley
ATTORNEY FOR THE DEFENDANT
354 Saint Emanuel St.
Mobile, AL 36603
(251) 441-7772
darleylaw@gmail.com

**Certificate of Service**

I hereby certify that I have served a copy of the forgoing on the undersigned by electronic filing on this the 9th day of __October____, 2015.

US Attorney's Office
Christopher Bodnar
Deborah Griffin

/s/ Jason Darley_____
Jason Darley